FILED

2024 Sep-06  AM 08:58
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | | |
|---|---|---|
| MONIQUE SANTAE LEWIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2:23-cv-00597-NAD |
| | ) | |
| SOCIAL SECURITY ADMINISTRATION, COMMISSIONER, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## MEMORANDUM OPINION AND ORDER
## AFFIRMING THE DECISION OF THE COMMISSIONER

Pursuant to 42 U.S.C. § 405(g), Plaintiff Monique Santae Lewis appeals the decision of the Commissioner of the Social Security Administration ("Commissioner") on her claim for disability benefits and supplemental security income benefits.  Doc. 1.  Plaintiff Lewis applied for benefits with an alleged onset date of May 11, 2012.  Doc. 14 at 1–2.  The Commissioner denied Lewis' claim for benefits.  Doc. 14 at 2. In this appeal, the parties consented to magistrate judge jurisdiction.  Doc. 13; 28 U.S.C. § 636(c)(1); Fed. R. Civ. P. 73.

After careful consideration of the parties' submissions, the relevant law, and the record as a whole, the court **AFFIRMS** the Commissioner's decision.

## ISSUE FOR REVIEW

In this appeal, Lewis argues that substantial evidence does not support the

1

decision of the Administrative Law Judge (ALJ) because the ALJ failed to properly account for Lewis' headaches.  Doc. 14 at 3.

## STATUTORY AND REGULATORY FRAMEWORK

A claimant applying for Social Security benefits bears the burden of proving disability.  *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005).  To qualify for disability benefits, a claimant must show disability, which is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see* 20 C.F.R. § 404.1505.

A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. § 423(d)(3).

The Social Security Administration (SSA) reviews an application for disability benefits in three stages:   (1) initial determination, including reconsideration; (2) review by an ALJ; and (3) review by the SSA Appeals Council. *See* 20 C.F.R. § 404.900(a)(1)–(4).

When a claim for disability benefits reaches an ALJ as part of the administrative process, the ALJ follows a five-step sequential analysis to determine

whether the claimant is disabled.  The ALJ must determine the following:

(1)    whether the claimant is engaged in substantial gainful activity;

(2)    if not, whether the claimant has a severe impairment or combination of impairments;

(3)    if so, whether that impairment or combination of impairments meets or equals any "Listing of Impairments" in the Social Security regulations;

(4)    if not, whether the claimant can perform his past relevant work in light of his "residual functional capacity" or "RFC"; and,

(5)    if not, whether, based on the claimant's age, education, and work experience, he can perform other work found in the national economy.

20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *see Winschel v. Commissioner of Soc. Sec. Admin.*, 631 F.3d 1176, 1178 (11th Cir. 2011).

The Social Security regulations "place a very heavy burden on the claimant to demonstrate both a qualifying disability and an inability to perform past relevant work." *Moore*, 405 F.3d at 1211.  At step five of the inquiry, the burden temporarily shifts to the Commissioner "to show the existence of other jobs in the national economy which, given the claimant's impairments, the claimant can perform." *Washington v. Commissioner of Soc. Sec.*, 906 F.3d 1353, 1359 (11th Cir. 2018) (quoting *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987)).   If the Commissioner makes that showing, the burden then shifts back to the claimant to show that he cannot perform those jobs. *Id.*  So, while the burden temporarily shifts

to the Commissioner at step five, the overall burden of proving disability always remains on the claimant. *Id.*

## STANDARD OF REVIEW

The federal courts have only a limited role in reviewing a plaintiff's claim under the Social Security Act. The court reviews the Commissioner's decision to determine whether "it is supported by substantial evidence and based upon proper legal standards." *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997).

**A.** With respect to fact issues, pursuant to 42 U.S.C. § 405(g), the Commissioner's "factual findings are conclusive if supported by 'substantial evidence.'" *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Commissioner of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004).

In evaluating whether substantial evidence supports the Commissioner's decision, a district court may not "decide the facts anew, reweigh the evidence," or substitute its own judgment for that of the Commissioner. *Winschel*, 631 F.3d at 1178 (citation and quotation marks omitted); *see Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) (similar). If the ALJ's decision is supported by substantial evidence, the court must affirm, "[e]ven if the evidence preponderates against the Commissioner's findings." *Crawford*, 363 F.3d at 1158 (quoting *Martin*, 894 F.2d

at 1529).

But "[t]his does not relieve the court of its responsibility to scrutinize the record in its entirety to ascertain whether substantial evidence supports each essential administrative finding." *Walden*, 672 F.2d at 838 (citing *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980)); *see Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987). "The ALJ must rely on the full range of evidence . . . , rather than cherry picking records from single days or treatments to support a conclusion." *Cabrera v. Commissioner of Soc. Sec.*, No. 22-13053, 2023 WL 5768387, at *8 (11th Cir. Sept. 7, 2023).

**B.**     With respect to legal issues, "[n]o . . . presumption of validity attaches to the [Commissioner's] legal conclusions, including determination of the proper standards to be applied in evaluating claims." *Walker*, 826 F.2d at 999. And the Commissioner's "failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal." *Cornelius v. Sullivan*, 936 F.2d 1143, 1145–46 (11th Cir. 1991).

## BACKGROUND

### A.     Procedural background

Lewis has filed prior applications for benefits in 2005, 2007, 2010, 2015, and 2019, and the Commissioner has denied all of those claims. Doc. 10-3 at 16. Lewis'

5

2007 and 2010 applications were denied by ALJ decisions.  Doc. 10-3 at 16.

On January 29, 2020, Lewis applied for both social security disability insurance (SSDI) and supplemental security income (SSI) benefits, alleging disability due to degenerative disc disease, headaches, right ankle degenerative joint disease, right shoulder tendonitis, and anemia.  Doc. 14 at 1–2.  At the time of her application, Lewis alleged a disability onset date of May 5, 2005, which later was amended at the ALJ hearing to May 11, 2012.  Doc. 10-3 at 16.

Lewis' applications were denied at the initial level (and on reconsideration).  Doc. 14 at 2.  Following the initial denial of her claims, Lewis requested a hearing before an ALJ.  Doc. 14 at 2.  On October 3, 2022, the ALJ held a hearing.  Doc. 14 at 2.  On November 23, 2022, the ALJ issued an unfavorable decision.  Doc. 14 at 2.

Lewis petitioned the Appeals Council for review, which was denied on March 17, 2023.  Doc. 14 at 3.  Because the Appeals Council found no reason to review the ALJ's decision, the ALJ's decision became the final decision of the Commissioner.  *See* 42 U.S.C. § 405(g).

### B.    Factual background and ALJ hearing

Lewis was born on May 18, 1985.  Doc. 10-7 at 80.

On May 6, 2005, Lewis presented to UAB Hospital with an "open right ankle fracture dislocation" as the result of a motor vehicle accident.  Doc. 10-8 at 45.  On

May 7, 2005, Lewis underwent surgery to repair her ankle.  Doc. 10-8 at 41–44.

After her ankle fracture and surgery, Lewis continued to seek medical care for pain

in her right foot and ankle.  *See, e.g.*, Doc. 10-8 at 37, 95, 98.

On February 2, 2013, Lewis presented to UAB Hospital with fatigue and a

headache.  Doc. 10-8 at 5.  She was diagnosed with severe, symptomatic anemia.

Doc. 10-8 at 7.  After receiving a blood transfusion, Lewis was discharged home.

Doc. 10-8 at 3.

On September 24, 2016, Lewis presented to UAB Highlands with "a

throbbing headache, sharp neck pain, mid back pain, and breast pain."  Doc. 10-7 at

84.  She was diagnosed with chronic musculoskeletal pain and a tension headache.

Doc. 10-7 at 86.

On August 28, 2017, Lewis presented to an urgent care clinic with muscle

spasms and a headache lasting "for a couple of days."  Doc. 10-8 at 54.  Lewis

reported that she was "achy all over," and reported her pain to be a 9 out of 10.  Doc.

10-8 at 54.  The documented clinical impression of Lewis was "muscle spasms of

the head AND/OR neck."  Doc. 10-8 at 54.

On October 4, 2017, Lewis visited an outpatient primary care clinic for a

follow-up appointment.  Doc. 10-8 at 56.  A physical assessment of Lewis showed

"muscle spasms of head AND/OR neck."  Doc. 10-8 at 57.  Lewis reported that she

was experiencing no pain.  Doc. 10-8 at 57.

On December 13, 2017, Lewis presented to an urgent care clinic complaining of chest wall pain on her right side.  Doc. 10-8 at 59.  Lewis reported her pain level to be a 0 out of 10.  Doc. 10-8 at 59.  The documented clinical impression was "muscle spasms of the head AND/OR neck."  Doc. 10-8 at 59–60.

On September 19, 2019, nurse practitioner Cassandra Warner Frieson conducted an examination of Lewis.  Doc. 10-8 at 64.  Lewis reported daily "constant headaches" to Frieson, with "radiation of pain to the neck and shoulders."  Doc. 10-8 at 64.  Lewis rated her headache pain a 10 out of 10.  Doc. 10-8 at 64.  Frieson found that "the physical examination findings, although consistent, are not strongly consistent with the claimant's stated functional limitations."  Doc. 10-8 at 68.

On September 30, 2020, Dr. Dallas M. Russell conducted an examination of Lewis.  Dr. Russell noted that Lewis "complains of a chronic daily headache that is in the right frontal region."  Doc. 10-8 at 90.  Dr. Russell included "chronic daily headache" in his diagnosis of Lewis.  Doc. 10-8 at 93.

On May 19, 2020, Lewis completed a headache questionnaire with the Disability Determination Service, in which she reported having severe headaches "almost every day," "5 times a week sometimes," and "since 2005."  Doc. 10-6 at 97.  She stated that "thinking [too] much" and "getting mad" cause her to have headaches, and that she uses over the counter medication to help with her headaches.  Doc. 10-6 at 98.

On October 3, 2022, the ALJ held an in-person hearing on Lewis' application for disability benefits.  Doc. 10-3 at 36.  During the hearing, Lewis amended her alleged disability onset date to May 11, 2012.  Doc. 10-3 at 38.

Lewis testified that, since her motor vehicle accident in 2005, she has dealt with ankle pain every day.  Doc. 10-3 at 39.  Lewis testified that she experiences numbness in her ankle and shooting pains through her back and leg at night.  Doc. 10-3 at 40.  Lewis also testified that she deals with swelling in her ankle "all the time."  Doc. 10-3 at 41.

Lewis testified that she experiences pain in her right shoulder that has affected her range of motion.  Doc. 10-3 at 42.

Lewis also testified that she experiences headaches every day.  Doc. 10-3 at 42.  Lewis testified that the headaches last all day until she falls asleep.  Doc. 10-3 at 43.

As to her headaches, Lewis testified that stress might be a trigger.  Doc. 10-3 at 54.  Lewis also testified that she has had problems with headaches "for years," and that she experienced headaches before her motor vehicle accident in 2005.  Doc. 10-3 at 54–55.

Lewis testified that she cannot lift more than 5 pounds.  Doc. 10-3 at 49.  Lewis testified that she takes prescription pain medication, but that the medication does not relieve the pain.  Doc. 10-3 at 57–58.

Vocational Expert (VE) Bassey Duke testified that a hypothetical individual with Lewis' age, education, work experience, and the limitations posed by the ALJ could perform jobs that exist in significant numbers in the national economy.  Doc. 10-3 at 59–66.

## C.    ALJ decision

On November 23, 2022, the ALJ entered an unfavorable decision.  Doc. 10-3 at 16–27.  In the decision, the ALJ found that Lewis met the requirements for insured status through September 30, 2013.  Doc. 10-3 at 18.  The ALJ concluded that Lewis "has not been under a disability, as defined in the Social Security Act, from May 11, 2012, through the date of this decision."  Doc. 10-3 at 27.

The ALJ applied the five-part sequential test for disability (*see* 20 C.F.R. §§ 404.1520(a), 416.920(a); *Winschel*, 631 F.3d at 1178).  Doc. 10-3 at 17–18.  The ALJ found that Lewis was insured through September 30, 2013, and that while Lewis had worked after her amended alleged disability onset date of May 11, 2012, her work activity did not rise to the level of substantial gainful activity.  Doc. 10-3 at 18–19.  The ALJ found that Lewis has severe impairments of chronic tendonitis in her right shoulder, minimal cervical spondylosis, status post tibiotalar arthrodesis, and osteoarthropathy of the right ankle.  Doc. 10-3 at 19.  The ALJ also found that Lewis had non-severe impairments of anemia and thyromegaly.  Doc. 10-3 at 19.

The ALJ stated that "the claimant has alleged headaches as one of her

disabling impairments," and that Social Security Ruling (SSR) 19-4p "sets forth the criteria for establishing a primary headache disorder as a medically determinable impairment." Doc. 10-3 at 19.

With respect to Lewis' headaches, the ALJ then found that a "careful review of the record" revealed "no diagnoses by or observations of headache events from acceptable medical sources." Doc. 10-3 at 19. Further, the ALJ found that, "despite the claimant's allegations of a headache disorder, the record fails to establish the presence of a primary headache disorder as a medically determinable impairment." Doc. 10-3 at 19–20 (citing SSR 19-4p and 20 C.F.R. § 404.1509).[1]

The ALJ determined that Lewis did not have an impairment or combination of impairments that met or medically equaled the severity of one of the impairments listed in the applicable Social Security regulations. Doc. 10-3 at 20.

The ALJ then determined Lewis' residual functional capacity (RFC), finding that Lewis could "perform sedentary work" as defined in the regulations, except that she could only occasionally stoop, kneel, crouch, and crawl; should not operate right foot controls; should not drive; should not perform frequent right shoulder reaching, including overhead reaching; should not climb ladders or scaffolds; could

---

[1] *See* 20 C.F.R. § 404.1509 ("Unless [the claimant's] impairment is expected to result in death, it must have lasted or must be expected to last for a continuous period of at least 12 months. . . . this [is] the duration requirement.").

occasionally climb stairs; should not have exposure to unrestricted heights; and should not have concentrated exposure to cold or rainy environments.  Doc. 10-3 at 20.

In assessing Lewis' RFC and the extent to which her symptoms limited her function, the ALJ stated that the ALJ "must follow" the required "two-step process": (1) "determine[] whether there is an underlying medically determinable physical or mental impairment[] . . . that could reasonably be expected to produce the claimant's pain or other symptoms"; and (2) "evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's work related activities."  Doc. 10-3 at 21.  The ALJ also stated that "whenever statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence," the ALJ "must consider other evidence in the record to determine if the claimant's symptoms limit the ability to do work-related activities."  Doc. 10-3 at 21.

In determining Lewis' RFC, the ALJ considered information from Lewis' disability reports, medical records, and hearing testimony regarding the limitations from her impairments, including testimony that Lewis experiences constant, daily pain in her right ankle rated a 9 out of 10, and that Lewis "has headaches, 'charley horses,' cramping, and daily swelling of the right ankle."  Doc. 10-3 at 21.  The ALJ

considered Lewis' testimony that "the ankle aches on account of rain, and her headaches last[] the entire day." Doc. 10-3 at 21. The ALJ also considered Lewis' testimony that she could only sit for 25 to 30 minutes, stand for less than 25 minutes, walk less than 1 block, and may be able to lift or carry 5 pounds with her right arm. Doc. 10-3 at 21.

The ALJ summarized the evidence underlying the ALJ's decision, finding that Lewis testified that she broke her right ankle in 2005 and underwent "open reduction and internal fixation." Doc. 10-3 at 21. The ALJ summarized medical records regarding Lewis' ankle injury, stating that, "[w]hen last examined at the Cooper Green Hospital orthopedic clinic in June 2010, it was noted the claimant had a well-healed fusion, was full weight bearing, and would require additional follow-up only as needed." Doc. 10-3 at 21.

The ALJ found that Lewis followed up for treatment of menorrhagia in February 2013. Doc. 10-3 at 22. Lewis had presented to UAB Hospital with fatigue and a headache (*see* Doc. 10-8 at 5), and the ALJ found that Lewis "was assessed as stable, and her physical examination was unremarkable, including her musculoskeletal status that demonstrated normal strength and normal range of motion" (Doc. 10-3 at 22).

The ALJ found that Lewis sought treatment from UAB Hospital in August 2015 for left ankle pain, and an x-ray revealed no acute osseous abnormality. Doc.

10-3 at 22.  The ALJ found that, during a December 14, 2015 medical visit, Lewis complained of problems with her right shoulder, and her physical exam was normal for all systems except for the right shoulder, which was tender.  Doc. 10-3 at 22.

The ALJ considered evidence that Lewis reported a throbbing headache during a September 24, 2016 medical visit, but that she "was in no acute distress," "demonstrated normal range of motion," and exhibited "normal musculoskeletal strength."  Doc. 10-3 at 22. The ALJ stated that the impression from that visit was chronic musculoskeletal pain and tension headache.  Doc. 10-3 at 22.

Citing records from Cooper Green Hospital, the ALJ found that on August 28, 2017, Lewis complained of a headache and was "achy all over."  Doc. 10-3 at 22. The ALJ found that the clinical impression was muscle spasms of the head and/or neck.  Doc. 10-3 at 22.  The ALJ found that at Lewis' follow-up appointment on October 4, 2017, a review of systems was negative, with the exception of musculoskeletal and joint pain, but Lewis' pain level was a 0 out of 10.  Doc. 10-3 at 22.  The ALJ found that, at the October 4, 2017 follow-up appointment, Lewis' spine showed minimal spondylosis, unfused apophysis at C3-4, and unremarkable cervical spine.  The ALJ also found that Lewis' right shoulder "demonstrated no significant abnormalities and a normal right shoulder."  Doc. 10-3 at 22.

The ALJ summarized a December 13, 2017 medical visit where Lewis complained of pain in the right side of her chest and reported "that it hurt with a deep

14

breath and with movement of the right arm," and Lewis also reported that she was coughing "due to having a cold a couple of weeks ago." Doc. 10-3 at 22. The ALJ found that Lewis denied any other complaints, her reported pain level was a 0 out of 10, and a review of systems was negative except for the mentioned complaints. Doc. 10-3 at 22. The ALJ stated that the impression was muscle spasms of the head and/or neck. Doc. 10-3 at 23.

The ALJ went on to consider records from Cooper Green Hospital from June 2021 and 2022, where Lewis was treated for pain in her right shoulder, right ankle, and elbows. Doc. 10-3 at 23. The ALJ found that, at a June 2021 visit, Lewis' pain was reported to be a 7 out of 10, and x-rays revealed old fracture deformities to her right ankle and a normal right shoulder. Doc. 10-3 at 23–24.

The ALJ summarized visits from December 29, 2021, January 31, 2022, and February 22, 2022, where Lewis reported continued pain in her right leg and ankle. Doc. 10-3 at 24.

The ALJ summarized an emergency room visit from May 5, 2022, where Lewis reported that she was involved in a motor vehicle accident as a restrained passenger two weeks prior and was complaining of right arm and back pain. Doc. 10-3 at 24. The ALJ found that a review of systems was negative, and that Lewis had normal alignment, normal range of motion, normal strength, and no swelling. Doc. 10-3 at 24.

The ALJ went on to find that Lewis' "description of her impairments and her resulting symptoms and limitations are not entirely consistent, given the medical history, reports from examining and treating practitioners, activities of daily living and objective, clinical findings on examination." Doc. 10-3 at 24. The ALJ found that "the documentary record does not substantiate the alleged intensity, degree or duration of pain and other limitations that would preclude [Lewis] from performing work-related activities commensurate with her assigned residual functional capacity." Doc. 10-3 at 24. The ALJ found that Lewis' medical records show that she has no difficulties moving around, normal gait, normal strength, and normal grip strength, and that "there is nothing in the record that would preclude the claimant from performing work consistent with sedentary activities." Doc. 10-3 at 24–25.

The ALJ also summarized and considered the findings of nurse practitioner Cassandra Frieson from September 9, 2019,[2] and Dr. Dallas Russell from September

_____

[2] "On September 9, 2019, Cassandra Frieson, CRNP, conducted an examination of the claimant at the request of the state agency Disability Determination Service (DDS). The claimant denied use of an assistive device. She reported driving herself to the evaluation. She complained of right ankle pain, rated 10/10 and daily headache pain 10/10. On exam, the claimant was well developed, and in no acute distress. Her musculoskeletal evaluation revealed flexure of the right 2nd through 5th toes, and crepitus upon movement or rotation of the right ankle. There were no facial grimaces or tenderness upon palpation of the shoulders, paraspinal muscles, and the spine was midline. There was no scoliosis. The claimant had moderate edema of the right ankle. There was no cyanosis. Peripheral pulses were palpable bilaterally, +4-5/5. She was able to write her name legibly using a pen and paper and pick up coins and a paperclip from a table using the right hand without difficulty

30, 2020,[3] who both conducted examinations of Lewis at the request of the Disability Determination Service.  Doc. 10-3 at 23.  The ALJ found that the reports "are persuasive to the extent that they confirm the claimant can perform sedentary type work activities."  Doc. 10-3 at 25.

The ALJ found that, "[i]n summary, after a thorough review of the evidence of record, including [Lewis'] allegations and testimony, forms completed at the request of Social Security, the objective medical findings, the medical opinions, and other relevant evidence," Lewis was "capable of performing work consistent with the residual functional capacity" in the ALJ's decision.  Doc. 10-3 at 25.

---

(Exhibit D3F)."  Doc. 10-3 at 23.

[3] "On September 30, 2020, Dallas Russell, M.D., conducted an examination of the claimant at the request of the DDS.  The claimant presented with complaints of right ankle pain, right shoulder pain, neck pain, mid back pain, right MP index finger pain and daily headaches.  On exam, the claimant had normal range of motion of her neck.  There was no cyanosis, clubbing, edema or pitting edema of the extremities.  There were no varicosities.  Her right ankle had some range of motion abnormality.  The right ankle was swollen medially and laterally.  The claimant had hammertoes of the right foot.  There was enlargement of the MP joint of the right index finger.  Her middle three toes were tender on the right side.  There was no spasm, deformity or tenderness of the back.  Straight leg raising was negative.  The claimant did not have difficulty getting off and on the exam table.  Her gait was normal.  Her station was normal.  The claimant could not squat or heel/toe walk.  The claimant could tandem walk.  The claimant had normal strength.  Her sensory exam was normal.  Reflexes were 2-plus except one-plus at the right ankle.  Grip strength was normal.  Romberg testing and straight leg raising in both seated and supine positions were negative.  There was no atrophy.  Fine and gross manipulations were normal.  Radiology studies of the right ankle identified severe osteoarthropathy, status post tibiotalar arthrodesis, but no acute osseous abnormality (Exhibit D7F)."  Doc. 10-3 at 23.

The ALJ then found that Lewis was unable to perform any past relevant work. Doc. 10-3 at 26.

After considering Lewis' age, education, work experience, RFC, and the testimony of the VE, the ALJ found that Lewis could perform jobs that exist in significant numbers in the national economy.  Doc. 10-3 at 26.  Consequently, the ALJ found that Lewis had "not been under a disability, as defined in the Social Security Act, from May 11, 2012, through the date of this decision."  Doc. 10-3 at 27.

## DISCUSSION

Having carefully considered the record and briefing, the court concludes that the ALJ's decision was supported by substantial evidence and based on proper legal standards.  The ALJ properly assessed Lewis' headaches.

As an initial matter (and as noted above), the ALJ properly applied SSR 19-4p, which "sets forth the criteria for establishing a primary headache disorder as a medically determinable impairment," given that Lewis had "alleged headaches as one of her disabling impairments."  *See* Doc. 10-3 at 19–20.  So, the ALJ's decision was "based upon proper legal standards."  *Lewis*, 125 F.3d at 1439.

Instead, Lewis argues in her brief[4] that the ALJ failed "to properly account for

---

[4] In her reply brief, Lewis argues that the court should grant summary judgment pursuant to Federal Rule of Civil Procedure 56, because the Commissioner did not timely file the opposition brief.  Doc. 16 at 3–4.  Lewis argues that the

Ms. Lewis' headaches" by not including "limitations to accommodate Ms. Lewis'

headaches."  Doc. 14 at 3.  Lewis also argues that the ALJ erred by concluding that

"Ms. Lewis' records contain neither a diagnosis of headaches nor an observation of

headache events [from] an acceptable medical source."  Doc. 14 at 13.  Lewis argues

further that the ALJ incorrectly determined that "Ms. Lewis' headaches did not even

qualify as a medically determinable impairment" and "did not consider them when

forming Ms. Lewis' RFC."  Doc. 14 at 16.

Again, SSR 19-4p "provides guidance on how [the SSA] establish[es] that a

person has a medically determinable impairment . . . of a primary headache disorder

and how [the SSA] evaluate[s] primary headache disorders in disability claims."

2019 WL 4169635, at *1 (Aug. 26, 2019).[5]  According to SSR 19-4p, "Primary

headache disorders are a collection of chronic headache illnesses characterized by

---

Commissioner's brief was due on September 4, 2023, but was not filed until
September 6, 2023.  Doc. 16 at 3.  The court takes judicial notice of the fact that
September 4, 2023, was Labor Day—i.e., a legal holiday.  *See* Fed. R. Evid. 201;
Fed. R. Civ. P. 6.  Consequently (and absent any showing of prejudice), the court
will not impose any sanction for a brief that appears to have been filed one day late.

[5] "Headaches are complex neurological disorders involving recurring pain in the
head, scalp, or neck.  Headaches can occur in adults and children.  The National
Institute of Neurological Disorders and Stroke (NINDS), the American Academy of
Neurology, and other professional organizations classify headaches as either primary
or secondary headaches.  Primary headaches occur independently and are not caused
by another medical condition.  Secondary headaches are symptoms of another
medical condition such as fever, infection, high blood pressure, stroke, or tumors."
SSR 19-4p, 2019 WL 4169635, at *2.

repeated exacerbations of overactivity or dysfunction of pain-sensitive structures in the head.  Examples of common primary headaches include migraines, tension-type headaches, and trigeminal autonomic cephalalgias."  *Id.* at *2.

SSR 19-4p explains that the SSA "may establish only a primary headache disorder as a[] [medically determinable impairment]," and that the SSA "will not establish secondary headaches (for example, headache attributed to trauma or injury to the head or neck or to infection) as [medically determinable impairments] because secondary headaches are symptoms of another underlying medical condition."  2019 WL 4169635, at *5.  The SSA "establish[es] a primary headache disorder as a[] [medically determinable impairment] by considering objective medical evidence (signs, laboratory findings, or both) from an [acceptable medical source]."  *Id.*

SSR 19-4p also explains that the SSA "will not establish the existence of a[] [medically determinable impairment] based only on a diagnosis or a statement of symptoms."  2019 WL 4169635, at *6.

Rather, the SSA "will consider the following combination of findings reported by an [acceptable medical source] when "establish[ing] a primary headache disorder as a[] [medically determinable impairment]," 2019 WL 4169635, at *6:  "[a] primary headache disorder diagnosis from an [acceptable medical source]"; "[a]n observation of a typical headache event, and a detailed description of the event including all associated phenomena, by an [acceptable medical source]";

"[r]emarkable or unremarkable findings on laboratory tests; and, "[r]esponse to treatment." *Id.*

With respect to the controlling legal standard, that is exactly what the ALJ said in the ALJ's decision. "SSR 19-4p sets forth the criteria for establishing a primary headache disorder as a medically determinable impairment: (1) a primary headache disorder diagnosis from an acceptable medical source; (2) an observation of a typical headache event, and a detailed description of the event including all associated phenomena, by an acceptable medical source; (3) remarkable or unremarkable findings on laboratory tests; and (4) response to treatment." Doc. 10-3 at 19 (citing SSR 19-4p, section 7).

Further, SSR 19-4p provides that a diagnosis of a primary headache disorder from an acceptable medical source "identifies the specific condition that is causing the person's symptoms." 2019 WL 4169635, at *6. The "evidence must document that the [acceptable medical source] who made the diagnosis reviewed the person's medical history, conducted a physical examination, and made the diagnosis of a primary headache disorder only after excluding alternative medical and psychiatric cause of the person's symptoms." *Id.* And "the treatment notes must be consistent with the diagnosis of a primary headache disorder." *Id.*

In this regard, Lewis argues that the ALJ erred by making an "unequivocal declaration that Ms. Lewis' records contain neither a diagnosis nor an observation

of headache events from an acceptable medical source." Doc. 14 at 13. Applying SSR 19-4p (and as explained above), the ALJ found after "a careful review of the record" that Lewis received "no diagnoses by or observations of headache events from acceptable medical sources." Doc. 10-3 at 19. The ALJ also found that, "despite the claimant's allegations of a headache disorder, the record fails to establish the presence of a primary headache disorder as a medically determinable impairment." Doc. 10-3 at 19–20.

Substantial evidence supports the ALJ's findings. A review of Lewis' medical records confirms that, while Lewis complained of headaches on several occasions, and even may have been diagnosed with headaches and related symptoms, Lewis still never was diagnosed with a primary headache disorder according to the requirements of SSR 19-4p. Among other things, no acceptable medical source made such a diagnosis after "excluding alternative medical and psychiatric cause[s] of [Lewis'] symptoms." *See* 2019 WL 4169635, at *6. Nor do Lewis' medical records include any "observation of a typical headache event, and a detailed description of the event including all associated phenomena, by an acceptable medical source." *See id.*[6]

---

[6] "During a physical examination, an [acceptable medical source] is often able to observe and document signs that co-occur prior to, during, and following the headache event. Examples of co-occurring observable signs include occasional tremors, problems concentrating or remembering, neck stiffness, dizziness, gait instability, skin flushing, nasal congestion or rhinorrhea (runny nose), puffy eyelid,

Lewis is correct that Dr. Russell's diagnosis of Lewis included "chronic daily headaches." Doc. 10-8 at 93. But Dr. Russell's assessment of Lewis did not identify the "specific condition" causing Lewis' symptoms, nor did it include an "observation" and "detailed description" of a typical headache event. *See* SSR 19-4p, 2019 WL 4169635, at *6. Nothing in Lewis' medical records shows that Dr. Russell—or any other acceptable medical source—ever "excluded alternative medical and psychiatric cause[s]" of Lewis' headaches (*see id.*), and there is no record of any laboratory testing related to Lewis' headaches (*see id.*). And, while Frieson's assessment of Lewis included Lewis' report of frontal headaches with radiation of pain to the neck and left shoulder and revealed that Lewis' "vibratory sensation is impaired over arms, hands, legs, and feet" and that Lewis "clenches [her] jaw," Frieson appears to have made no definitive diagnosis of headaches—much less a diagnosis of a primary headache disorder according to the requirements of SSR 19-4p. *See* Doc. 10-8 at 64–68. Thus, substantial evidence supports the ALJ's finding that the record does not establish any primary headache disorder as a

---

forehead or facial sweating, pallor, constriction of the pupil, drooping of the upper eyelid, red eye, secretion of tears, and the need to be in a quiet or dark room during the examination. In the absence of direct observation of a typical headache event by an [acceptable medical source], [the SSA] may consider a third party observation of a typical headache event, and any co-occurring observable signs, when the third party's description of the event is documented by an [acceptable medical source] and consistent with the evidence in the case file." SSR 19-4p, 2019 WL 4169635, at *6.

medically determinable impairment.

Moreover, SSR 19-4p requires an ALJ to "consider the extent to which the person's impairment-related symptoms are consistent with evidence in the record," because "[c]onsistency and supportability between reported symptoms and objective medical evidence is key in assessing the RFC." 2019 WL 4169635, at *8. The ALJ considered evidence that Lewis reported a throbbing headache during a September 24, 2016 medical visit, but that she "was in no acute distress," "demonstrated normal range of motion," and exhibited "normal musculoskeletal strength." Doc. 10-3 at 22. The ALJ also considered two medical visits from October 4, 2017, and December 13, 2017, where Lewis was diagnosed with muscle spasms in her head and/or neck but reported her pain level to be a 0 out of 10. Doc. 10-3 at 22. Likewise, Lewis testified that she has experienced headaches since before her motor vehicle accident in 2005 (Doc. 10-3 at 54–55), but her medical records do not show any documented complaints of headaches until 2013 (Doc. 10-8 at 5).

Lewis also argues that the ALJ's RFC finding is unsupported by substantial evidence because the ALJ "failed to incorporate necessary limitations to accommodate Ms. Lewis' headache." Doc. 14 at 16. "The residual functional capacity is an assessment, based upon all of the relevant evidence of a claimant's remaining ability to do work despite his impairments." *Lewis*, 125 F.3d at 1440. And, according to SSR 96-8P, "RFC is not the least an individual can do despite his

or her limitations or restrictions, but the *most*."  1996 WL 374184 at *2 (July 2, 1996) (emphasis in original).

As explained above, the ALJ determined that Lewis "has the residual functional capacity to perform sedentary work." Doc. 10-3 at 20.  The ALJ found that Lewis could occasionally stoop, kneel, crouch, and crawl; should not operate right foot controls; should not drive; should not perform frequent right shoulder reaching, including overhead reaching; should not climb ladders or scaffolds; could occasionally climb stairs; should not have exposure to unrestricted heights, and should not have concentrated exposure to cold or rainy environments.  Doc. 10-3 at 20.

In making this RFC determination, the ALJ "considered all symptoms" (Doc. 10-3 at 20), including Lewis' testimony that "she has headaches" (Doc. 10-3 at 21), and medical records regarding Lewis' complaints of headaches (*see* Doc. 10-3 at 22–23).  The ALJ did so, even though Lewis' headaches do not qualify as a medically determinable impairment under SSR 19-4p.  *See* 20 C.F.R. § 404.1545 (explaining that, in determining residual functional capacity, all impairments are considered, including impairments that are not severe).  Because the ALJ considered all of Lewis' medical history, including her headaches, the ALJ properly found Lewis' RFC.  And, with respect to Lewis' headaches, substantial evidence supports the ALJ's RFC determination.  In this regard, the court cannot reweigh the evidence

(*Winschel*, 631 F.3d at 1178); and, where the ALJ's decision is supported by substantial evidence, the court must affirm, "[e]ven if the evidence preponderates against the Commissioner's findings" (*Crawford*, 363 F.3d at 1158).

Thus, the ALJ's decision was "supported by substantial evidence and based upon proper legal standards." *See Lewis*, 125 F.3d at 1439.

## CONCLUSION

For the reasons stated above (and pursuant to 42 U.S.C § 405(g)), the Commissioner's decision is **AFFIRMED**. The court separately will enter final judgment.

**DONE** and **ORDERED** this September 6, 2024.

_____
**NICHOLAS A. DANELLA**
UNITED STATES MAGISTRATE JUDGE